IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:13-CR-63-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER OF DETENTION PENDING** |
| | ) | **TRIAL** |
| SAMUEL MCCRAE NEWKIRK, | ) | |
| | ) | |
| Defendant. | ) | |

This case came before the court today for hearing on the government's motion, pursuant to 18 U.S.C. § 3142(f), to detain defendant pending trial. The government presented the testimony of a detective with the Carteret County Sheriff's Office, who appears to be the lead officer in the matter. Defendant presented the testimony of the proposed third-party custodian, his father. The court also reviewed the pretrial services report. After careful consideration pursuant to 18 U.S.C. § 3142(g) of the credible information and argument submitted, and based on the findings and reasons stated below and in open court, the court finds by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure defendant's appearance as required, and by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community before trial if defendant is released. The government's motion is therefore GRANTED.

## Background

Defendant was charged in a single-count indictment on 3 September 2013 with possession with intent to distribute 28 grams or more of cocaine base or crack in violation of 21 U.S.C. § 841(a)(1). The evidence presented at the hearing showed that on the alleged offense

date the testifying detective and two other officers travelling with him in an area known for drug trafficking attempted to effect a traffic stop of defendant for a seat belt violation. Defendant, who had a history of interactions with the detective (including routinely giving the detective the finger), recognized him, turned recklessly into a driveway, and exited his vehicle. As he did so, a package with 38 grams of crack fell from defendant's lap onto the ground. Defendant then fled on foot. After several hundred feet, he threw down a bag of powdered cocaine and digital scales. The detective eventually reached defendant and, after a brief struggle, subdued him.

While the detective was searching defendant's right rear pocket, defendant stated loudly in the presence of an onlooker to the effect, "Why are you trying to plant evidence on me?" At the Sheriff's station defendant denied possessing the drugs the officers recovered. But when he overhead a discussion of the weight of the drugs, defendant denied that they weighed that much. Several days later, defendant was released on bond and remained on bond until his arrest on the instant charges.

To effect the arrest, the testifying detective went to defendant's father's residence, where defendant resided. Defendant's father told the detective that defendant was not at home, but when the detective informed the father he was returning defendant's truck to him (which had been seized on the alleged offense date) the father said defendant was next door. The detective went next door and arrested defendant. The father told the detective that had he known the detective was there to arrest defendant, he would not have said where he was.

### Discussion

Given the nature of the charges, the rebuttable presumption of detention in 18 U.S.C. § 3142(e)(3) applies, and the court has considered it, although defendant proffered sufficient evidence to shift the burden of production to the government. In addition to the presumption, the

principal findings and reasons underlying the court's determination that detention is required include the following: evidence showing that the government has a strong case, including the evidence reviewed above; the drug-related nature of the offense charged; the circumstances of the offense charged, including its relative recency, defendant's flight from arresting officers, the amount of crack involved, and the potential sentence defendant faces if convicted; defendant's criminal record, including one felony conviction, five misdemeanor convictions, one probation revocation, and commission of two offenses while on probation; the unsuitability of the proposed third-party custodial arrangement due to the proposed custodian's statement of regret to the testifying detective about telling him where defendant was, the defendant's seemingly fragile health due to heart failure (for which he has undergone open heart surgery and the implantation of two stents), his status as the only other person in the proposed custodial home, and the extent of the risk of flight and danger presented by defendant; and the other findings and reasons stated in open court.

The court considered evidence offered as mitigating, such as defendant's work history and the lack of reported violations by him of his state release. It finds, however, that the factors favoring detention outweigh such evidence.

## **Conclusion**

IT IS THEREFORE ORDERED that defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver

defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

    This, the 16th day of September 2013.

                                                                         James E. Gates
                                                                         United States Magistrate Judge